IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| TAMMY CASS, Individually and as Representative of the Estate of Marcus Cass, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CITY OF ABILENE, et al., | ) ) ) | |
| Defendants. | ) | Civil Action No. 1:13-CV-177-C |

## ORDER

On this day, the Court considered:

(1)    Defendants' 12(c) Motion for Judgment on the Pleadings Regarding Qualified

Immunity, filed May 15, 2014, by Stan Standridge and Chris Smith;

(2)    Plaintiffs' Response to Defendants' 12(c) Motion, filed June 5, 2014, as well as

the Brief in Support, filed June 6, 2014;[1]

(3)    Defendants' Motion for Partial Summary Judgment Relating to Issue of Qualified

Immunity, filed June 12, 2014, by Stan Standridge and Chris Smith;

(4)    Defendants' Supplemental Appendix to Motion for Partial Summary Judgment,

filed June 26, 2014;

(5)    Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment, filed

August 15, 2014;

---

[1]Plaintiffs filed a modified Brief in Response a day after they had initially filed their Response and Brief.

(6)    Plaintiffs' Supplemental Document, filed August 18, 2014, in support of their Response; and

(7)    Defendants' Reply and Objections to Plaintiffs' Response to Defendants' Motion for Partial Summary Judgment, filed August 29, 2014.

## I.
## BACKGROUND

This lawsuit arises out of the shooting death of Marcus Cass ("Decedent" or "Cass") during a police raid upon his place of business, Abilene Gold Exchange,[2] in the execution of a search warrant obtained by Officer Chris Smith to seek evidence of record-keeping violations related to the purchase of precious metals by Abilene Gold Exchange. Plaintiffs have brought claims against Defendant Smith, the officer who shot Decedent, and Defendant Standridge, the Chief of Police, in their individual capacities, alleging the following constitutional violations:

(1) under the Fourth Amendment based upon the manner in which the warrant was executed and the shooting of Decedent; and

(2) under the First Amendment based upon allegations that the warrant was obtained and executed and Decedent was shot in retaliation for Decedent's speaking out against a proposed city ordinance.[3]

---

[2]There appears to now be a change in Plaintiffs' allegations as to whether Marcus Cass was an owner of Abilene Gold Exchange or merely an employee. (*See* Pls.' Resp. 1 ("Marcus Cass was an employee."). Although Plaintiffs have alleged in the live pleading that Cass was the owner and that certain property seized during the raid was wrongfully held and not returned to the heirs of Cass, the Plaintiffs now argue that Abilene Gold Exchange was owned by Charles Camp. Kyle Cass also states in his Declaration that Marcus Cass was an employee of Abilene Gold Exchange. (Pls.' App. 14.)

[3]The ordinance would require gold buyers to hold purchases for a certain number of days and to enter the purchases into a law enforcement-monitored database.

The Abilene Police Department maintains a property crimes division that, among other things, investigates thefts and burglaries. State law requires buyers of precious metals to post the purchases onto an electronic database within 48 hours of the purchase and to collect certain information about the sellers, such as driver's license and contact information.[4] Law enforcement can access the database when investigating crimes of theft involving items such as stolen jewelry. The Abilene Police Department sought to build upon the state statute requirements and have the city council pass an ordinance that would also require buyers of precious metals to hold the purchases for at least 11 days before disposing of or selling the metals or items. Detective Jeff Cowan of the property crimes division was in large part responsible for seeking and securing passage of the ordinance. Cowan was also the officer alleged to have visited Abilene Gold Exchange in the past to review their records of purchases—visits that both parties admit occurred without incident or the need for warrants because it is agreed that the Abilene Gold Exchange cooperated in those instances.

On December 6, 2012, Cass attended a city council meeting in which the ordinance was on the agenda for discussion, where he spoke out against the waiting period. Cass, along with others who opposed the ordinance, believed that precious-metal buyers could possibly lose significant sums of money due to the fluctuations in precious-metal prices if the purchases were held for the entire proposed waiting period. In attendance at the city council meeting were both Officer Cowan and Chief Standridge. Standridge addressed the council in favor of passage, explaining that the ordinance would assist police in investigations of property crimes. The

---

[4]The state statutes relating to precious-metal purchasing entities can be found at Texas Occupations Code §§ 1956.001 *et seq.* Civil and criminal penalties exist for various violations of the statute.

council adopted/passed the ordinance but with a shorter waiting period than the one sought by the police department.

Less than a week later, on December 11, 2012, Detective Chris Smith, who had been moved into the property crimes division, was investigating a theft. He was unfamiliar with Abilene Gold Exchange, as well as with Cass and Camp. During the investigation into the theft, he contacted Abilene Gold Exchange and spoke with Camp on the telephone. Camp vented against what he viewed as a heavy administrative record-keeping burden imposed by the state and local laws upon his business. Camp did state to Smith that he would look into Smith's request regarding specific items and get back with Smith, but he did not do so before the warrant was obtained the next day. Smith perceived that not only was Camp uncooperative but also that Camp's opinions equated to an "anti-police attitude." Smith further investigated purchases by Abilene Gold Exchange on the online database and discovered that no recent purchases had been entered in approximately three weeks. This raised his suspicions that Abilene Gold Exchange was not keeping records as required by the state statute and local ordinance. Smith also discovered some instances of the purchases by Abilene Gold Exchange being entered into the database after more than 48 hours had passed, which also violated the record-keeping laws. Smith sought and obtained a search warrant based upon his affidavit containing this information. The warrant was executed on December 13, 2012. The officers entered the business during business hours with body armor/vests and guns drawn. During the entry, Officer Smith encountered Cass in a doorway. Cass reached for his gun in the holster on his hip and drew it, at which time Smith shot him twice. Cass died due to the gunshot wounds. The entry into the

business was captured on security camera (absent any audio), and the video evidence is part of the summary-judgment record.

Defendants Smith and Standridge have now moved for a judgment on the pleadings as well as for summary judgment as to certain claims alleged by the Plaintiffs. More specifically, Defendants argue that they are entitled to qualified immunity for the alleged excessive-force claims asserted against them in their individual capacities.[5]

## II.
## STANDARD

### Rule 12(c)–Judgment on the Pleadings

A motion for judgment on the pleadings is governed by Federal Rule of Civil Procedure 12(c). Rule 12(c) states that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for deciding a Rule 12(c) motion is the same as a Rule 12(b)(6) motion to dismiss." *Guidry v. Am. Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

In order for a complainant to state a claim for relief, the complainant must plead a short, plain statement of the claim showing entitlement to such relief. *See* Fed. R. Civ. P. 8. "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

[5]The Court uses the term "Defendants" in this Order to describe Defendants Smith and Standridge. The City of Abilene, though a named Defendant, is not relevant to the Court's analysis for purposes of the two motions made the subject of this Order. Thus, any reference to "Defendants" is not intended to include Defendant City of Abilene.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Id.* It follows that "where the well-pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the
pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  While this
standard does not require the complainant to make detailed factual allegations, it does demand
more than a complainant's bare assertions or legal conclusions. *Id.* at 681.  Hence, formulaic
recitations of the elements of a cause of action supported by mere conclusory statements do not
satisfy Rule 8.  *Id.*

### Rule 56–Summary Judgment

Summary judgment is appropriate only if "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the
light most favorable to the non-moving party, "show that there is no genuine issue as to any
material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (internal quotations omitted).  A dispute about a
material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for
the non-moving party. *Id.* at 248.  An actual controversy of fact exists only where both parties
have submitted evidence of contradictory facts. *Olabisiomotosho v. City of Houston*, 185 F.3d
521, 525 (5th Cir. 1999).  The contradictory facts must be relevant, because disputed fact issues
which are irrelevant and unnecessary will not be considered by the court when ruling on a
summary judgment. *Anderson*, 477 U.S. at 248.  In making its determination, the court must
draw all *justifiable* inferences in favor of the non-moving party. *Id.* at 255 (emphasis added).  If
the nonmoving party fails to make a showing sufficient to establish the existence of an element

essential to its case and on which it will bear the burden of proof at trial, summary judgment

must be granted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

To defeat a properly supported motion for summary judgment, the non-movant must

present more than a mere scintilla of evidence. *See Anderson*, 477 U.S. at 251. Rather, the

non-movant must present sufficient evidence upon which a jury could reasonably find in the

non-movant's favor. *Id.* Conclusory allegations and denials, speculation, improbable inferences,

unsubstantiated assertions, and legalistic argumentation are not adequate substitutes for specific

facts showing that there is a genuine issue for trial. *Douglass v. United Servs. Auto. Ass'n*, 79

F.3d 1415, 1428 (5th Cir. 1996) (en banc); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

### Qualified Immunity

The doctrine of qualified immunity serves to shield a government official from civil

liability for damages based upon the performance of discretionary functions if the official's acts

were objectively reasonable in light of then clearly established law. *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity

should be the norm and, as the Supreme Court has stated, protects "all but the plainly

incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 344-45

(1986).

To support a claim of qualified immunity, a defendant official must plead qualified

immunity and demonstrate that he is a governmental official whose position involves the

exercise of discretion. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 456-457 (5th Cir. 2001)

(quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992)). The burden then shifts to the

plaintiff to rebut the defense by establishing that the official's allegedly wrongful conduct

violated clearly established law. *Id.* Thus, the defendant is not required to demonstrate that he did not violate the clearly established rights of the plaintiff. *Id.*

Once properly pleaded, the court must make a threshold determination whether the plaintiff has alleged the deprivation of a constitutional right that was clearly established at the time of the alleged violation. *Kipps v. Caillier*, 197 F.3d 765, 768 (5th Cir. 1999) (citing *Kerr v. Lyford*, 171 F.3d 330, 339 (5th Cir.1999)); *see also Mitchell v. Forsythe,* 472 U.S. 511, 526 (1985). Following this threshold inquiry, the Court must then determine whether the defendant official's conduct was objectively reasonable in light of the clearly established constitutional right allegedly violated. *See Hare v. City of Corinth, Miss.,* 135 F.3d 320, 325 (5th Cir. 1998) (citing *Colston v. Barnhart*, 130 F.3d 96, 99 (5th Cir. 1997)).

"Clearly established" means that the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. at 640; *Thompson*, 245 F.3d at 457. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. *Anderson v. Creighton,* 483 U.S. at 640 (citing *Mitchell*, 472 U.S. at 535, n. 12). However, it is to say that, in the light of pre-existing law, the unlawfulness must be apparent. *See, e.g.*, *Malley*, 475 U.S. at 344-45. If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments or fairly be said to "know" that the law forbade conduct not previously identified as unlawful. *Harlow*, 457 U.S. at 818.

A defendant's acts are held to be objectively reasonable unless all reasonable officials, acting under the circumstances presented to the defendant, would have then known that the

defendant's conduct violated the Constitution or federal statute. *Anderson v. Creighton*, 483

U.S. at 640. The circumstances presented to the defendant include the facts known to the

defendant at the time of the action. *Id.* at 641. However, the subjective state of the defendant's

mind has no bearing on whether the defendant is entitled to qualified immunity. *Anderson v.*

*Creighton*, 483 U.S. at 641; *Thompson*, 245 F.3d at 456.

## III.
## DISCUSSION

As previously stated, Plaintiffs have sued Defendants Smith and Standridge in their

individual capacities alleging the use of excessive force in violation of the Fourth Amendment

and retaliation in violation of the First Amendment.[6] Those § 1983 claims are the subject of this

Order.

### *Motion for Judgment on the Pleadings*

As to Defendants' Motion for Judgment on the Pleadings, Defendants seek a judgment on

the pleadings under a qualified-immunity analysis for the "excessive force claims against Stan

Standridge and Chris Smith, Defendants." (Defs.' Mot. J. on the Pleadings 1.) Plaintiffs make

arguments in their Response to Defendants' Motion for Judgment on the Pleadings as to the

propriety of whether judgment should be granted for Defendant Smith "with regard to Plaintiffs'

unreasonable search claims"; the Court notes that the Defendants did not seek judgment on the

---

[6]It appears that Plaintiffs did not allege claims against the individual Defendants in their official capacities because suit was also brought against Defendant the City of Abilene. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (suit against official in his official capacity is, in reality, asserted against the governmental entity itself). Any alleged failure or deficiencies in training as to the manner in which the warrant was executed relate to claims against Defendant City of Abilene and not to either of the individual Defendants in their individual capacities. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

pleadings relating to any allegations based on an unreasonable search. Because the Defendants have also moved for summary judgment on Plaintiffs' claims of excessive force (the subject of the Motion for Judgment on the Pleadings) and retaliation, the Court finds that Defendants' Motion for Judgment on the Pleadings should be **DENIED AS MOOT** because the matters addressed in the Motion for Judgment on the Pleadings are likewise addressed in the Motion for Partial Summary Judgment.

### *Motion for Summary Judgment on Qualified Immunity*

#### a. Preliminary evidentiary matters

As a preliminary matter, the Court must first address Defendants' evidentiary objections raised in their Reply to Plaintiffs' Response:

#### 1. Declaration of Charles Camp

The Defendants object to two statements made by Camp in his Declaration. The first relates to Camp's statement that "Cass was in the back of the store and *came out fearing a robbery.*" The Court sustains Defendants' objection to the statement as speculation because Camp merely speculates that Cass "came out fearing a robbery." The second objection relates to Camp's statement that "[Cass] entered the room with no clear view of the invasion." Defendants argue that the statement is not made with personal knowledge. However, no party disputes that Camp was present in the room as the warrant was executed and can declare in his Declaration what he observed. Thus, Defendants' objection on this ground is overruled.

#### 2. Declaration of Roland DeLauney

Mr. DeLauney owned his own gold-purchasing business and worked in Abilene Gold Exchange from time to time when Cass and Camp needed his assistance. Defendants object to

DeLauney's statement that, in prior instances when the police would come to Abilene Gold Exchange and request information about stolen goods or check records, "[Camp] never threatened police and always complied with their requests." Defendants object on grounds that the statement is mere speculation and made without personal knowledge. The Court notes that Mr. DeLauney states near the introduction of his Declaration that "[he] was present on many occasions when Detectives from Abilene Police Department would come into [Abilene Gold Exchange] . . . ." However, Mr. DeLauney does not actually state that he was present and observed Camp on *all* such occasions. Thus, Defendants' objection is sustained because DeLauney fails to clarify to which particular instances he is referring when he states that "[Camp] never threatened the police and always complied with their requests."

Defendants also object to DeLauney's statement that after Cass spoke against the proposed ordinance, "Chief [Standridge] stared at Marcus Cass, nodded, and winked." The Court notes that DeLauney states in his Declaration that he was also present and spoke against the ordinance. Thus, he can declare what he observed, and Defendants' objection that the statement is mere speculation made without personal knowledge is overruled. Defendants likewise object to DeLauney's statement that "[Standridge] was trying to intimidate us." The Court sustains Defendants' objection on this point because the statement is mere speculation.

Finally, Defendants object to DeLauney's statement that "Cass expressed concern [to DeLauney] about the police retaliating against him." Defendants contend the statement is inadmissible hearsay and made without personal knowledge. The Court sustains Defendants' objection on this point.

### 3. Transcript of Abilene City Council Meeting of December 6, 2012

Defendants object to Plaintiffs' purported transcript of the December 6, 2012 Abilene City Council meeting as not properly authenticated and as not the best evidence. The Court sustains Defendants' objection to the purported transcript. The Defendants have submitted video from the meeting, and that is the best evidence of what transpired at the meeting.

### 4. Copies of news articles

Defendants object to Plaintiffs' numerous online news articles included in Plaintiffs' Appendix as unauthenticated, containing objectionable hearsay, and not made by someone with personal knowledge. The Court sustains Defendants' objections to the news articles.

### 5. Video taken of computer screen after the shooting

Defendants object to a purported video depicting what Plaintiffs describe in their brief as two officers reviewing Camp's laptop computer during the search and their discussions about finding violations of failing to pay sales tax for purchases made online. Defendants object that the video is not properly authenticated. They further object that the video evidence does not indicate who made the recording, whose voices can be heard, whether there have been any deletions to the recording, and where it was made. Defendants also contend that the evidence was not a discovery document provided to Plaintiffs by the Defendants. The Court sustains Defendants' objections as to the video.

### 6. Photographs

Finally, Defendants object to three photographs relied upon as evidence found at pages 16, 17, and 374 of Plaintiffs' Appendix. The first photo purports to depict a picture of a stolen watch and ring with the message to call the police if anyone tries to sell the items to Abilene

Gold Exchange. The second photo purports to depict two Post-It notes with officer contact information. The third photo purports to depict the front door of Abilene Gold Exchange containing a warning that the owner of the property is armed. Defendants argue that the photos are not properly authenticated. The Court sustains Defendants' objection to the photos.

### b. Analysis of Defendants' arguments

Plaintiffs bring claims under the Fourth Amendment as to the use of force and the execution of the warrant. A claim for excessive force is evaluated separate from a claim for improperly obtaining and executing a warrant. *See, e.g., Estate of Davis v. City of North Richland Hills*, 2003 WL 22244694, at *12, n.38 (N.D. Tex. Sept. 30, 2003), *rev'd on other grounds sub nom, Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375 (5th Cir. 2005) (reversing denial of qualified immunity for supervisors). The Court quotes *Davis* herein for the parties' convenience:

> To the extent that Plaintiffs are alleging that the officer defendants' force was excessive, in part, because they did not follow police procedures by obtaining a valid search warrant and knocking and announcing their presence before entering, the Court notes that "[t]he constitutional right to be free from unreasonable seizure has never been equated by the Court with the right to be free from a negligently executed stop or arrest." *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992) (citing *Young v. City of Killeen*, 775 F.2d 1349, 1353). In other words, even assuming that the officer defendants were somehow negligent in their actions leading up to the shooting of Troy Davis, such negligence resulting in a death does not automatically indicate that a constitutional violation has occurred. The proper inquiry in a claim under the Fourth Amendment for excessive force is to evaluate the circumstances surrounding the actual shooting and not the events leading up to the shooting itself. *Fraire*, 957 F.2d at 1275-76; *see Young*, 775 F.2d at 1352-53.

The Plaintiffs do not dispute that Defendants Smith and Standridge were acting within the scope of their discretionary duties. Once qualified immunity has been raised without any dispute as to whether a defendant was acting within the scope of discretionary duties, then the burden shifts to the plaintiff to show that the grant of qualified immunity is inappropriate. It is Plaintiffs' burden to establish that a violation of constitutional rights occurred and the violated rights had been clearly established.

*Excessive-Force Claim*

Defendant Smith seeks partial summary judgment by arguing that no genuine issue of material fact exists as to whether he is entitled to the qualified immunity defense. He contends that because Plaintiffs' pleadings clearly state, and the evidence conclusively shows, that Decedent was drawing his gun on Defendant Smith during the course of the raid, Decedent posed an immediate threat to the safety of Defendant Smith and the other officers. Defendant Smith further argues, and avers in his affidavit, that he had to make an immediate, split-second decision regarding the use of force against Decedent due to the fact that Decedent was drawing his weapon. Defendant Smith asserts the affirmative defense of qualified immunity and argues that the video (Pls.' App. at Ex. 29) clearly shows that his actions, made in light of such circumstances, were objectively reasonable and did not constitute excessive force as a matter of law.[7]

---

[7]Whether the law has been clearly established on the appropriate use of deadly force does not require any further analysis because neither party argues that the clearly established prong of qualified immunity is in dispute in this instance. *See Reyes v. Bridgwater*, 362 Fed. Appx. 403, 406 (5th Cir. 2010) ("Unlike some areas of constitutional law, the question of when deadly force is appropriate—and the concomitant conclusion that deadly force is or is not excessive—is well established.").

The familiar "reasonableness" standard governs claims for excessive use of force during an arrest. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). The elements of an excessive-force claim under the reasonableness standard are (1) an injury which (2) resulted directly and only from the use of force that was clearly excessive to the need and the excessiveness of which was (3) objectively unreasonable. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The test of reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. The reasonableness of the use of force is judged from the perspective of a reasonable officer at the scene rather than with the 20/20 vision of hindsight. *Id.* In other words, "[e]xcessive force claims . . . are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001). In determining objective reasonableness, a court must balance the amount of force used against the need for that force. *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996). The "calculus of reasonableness" a court uses to make that determination "must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-99. "[T]he need for force determines how much force is constitutionally permissible." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008). Although "[o]bjective reasonableness is a matter of law for the courts to decide, not a matter for the jury, . . . underlying

historical facts may be in dispute that are material to the reasonableness determination."
*Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

Plaintiffs' own pleadings clearly set forth facts indicating that Decedent was attempting to draw his weapon upon confronting the officers during the raid. This is supported by the summary judgment evidence. The video from the security camera inside Abilene Gold Exchange, though absent of audio, clearly shows Decedent drawing his weapon and pointing it at Smith, at which point Defendant Smith fired his weapon.[8] The video further shows Decedent's weapon fall to the floor as Decedent falls back from having been shot. Although Plaintiffs argue that Decedent was only *attempting* to draw his weapon when shot, the distinction is irrelevant under the circumstances of the split-second timing and perceived threat. *See Luna v. Mullenix*, ___ F.3d ___, 2014 WL 4251122, *8 (5th Cir. Aug. 28, 2014) (the issue is whether the officer perceived an immediate risk of harm at the moment of shooting).

Plaintiffs plead that "Cass attempted to draw his sidearm and instantaneously Smith crossed the doorway, saw Cass, and fired two shots striking Cass in the chest and arm." (Pls.' Am. Compl. ¶ 79.) Under the facts as pleaded, Cass's action in "draw[ing] his sidearm" reasonably and clearly posed an immediate threat to Defendant Smith's safety and the safety of the other officers. *See Royal v. Spragins*, ___ Fed. Appx. ___, 2014 WL 3378317, *2 (5th Cir. July 11, 2014) (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) ("Using 'deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a

---

[8]Plaintiffs submitted the video for the Court to review. As the Supreme Court has aptly stated, when a recorded videotape depicts certain evidence, it can be relied upon by the courts in a summary judgment setting. *Scott v. Harris*, 550 U.S. 372, 379 (U.S. 2007). The Supreme Court states, "[w]e are happy to allow the videotape to speak for itself." *Id.*

threat of serious harm to the officer or others.'"). The security-camera video evidence supports

that this exchange happened almost instantaneously, but Decedent can clearly be seen reaching

for his weapon and drawing it from the holster as Officer Smith stood in from of him.  No

reasonable juror could conclude that at the time of the shooting Defendant Smith did not

reasonably perceive a threat to himself and the other officers. *Saucier*, 533 U.S. at 207.  In fact,

the video shows the gun fully raised by Cass and pointing directly at Smith at the time Smith

discharges his weapon.  Thus, as argued by Defendant Smith, under a qualified-immunity

analysis, summary judgment is proper as to Plaintiffs' claims of excessive use of force alleged

against Defendant Smith in his individual capacity.

Defendant Standridge also seeks summary judgment, arguing that he is entitled to the

qualified-immunity defense for any excessive-force claim.  Specifically, he argues that although

he can be liable individually as a police chief, there must be some alleged connection between his

conduct and the alleged constitutional violation (excessive force).  Defendant Standridge argues

that Plaintiffs did not allege or present evidence calling into question whether Standridge (1)

used excessive force in shooting Decedent, (2) was in a position at the scene to stop or prevent

Smith from using deadly force, (3) failed to supervise or train Smith, or (4) was even present

during the raid.  The Court agrees with Defendant Standridge's arguments.  Plaintiffs have failed

to allege conduct by Defendant Standridge so as to overcome his assertion of qualified immunity

on the excessive-force allegations.  *See Estate of Davis ex rel. McCully v. City of North Richland*

*Hills*, 406 F.3d 375, 380-81 (5th Cir. 2005) (supervisors cannot be held liable merely upon a

theory of vicarious liability).  Further, Plaintiffs have failed to direct the Court to admissible

evidence that creates a genuine issue of material fact as to whether Standridge personally

17

participated in the shooting or was in a position at the scene to stop the shooting. Thus, as argued by Defendants, summary judgment is proper as to Plaintiffs' claims of excessive use of force alleged against Defendant Standridge in his individual capacity.

### *Execution of Warrant*

The Fourth Amendment, in addition to its ban on the use of unreasonably excessive force, also prohibits an unreasonable intrusion. The Fourth Amendment's ban on unreasonable searches and seizures is applicable to commercial premises. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 195 (5th Cir. 2009). When suspicion of criminal activity is so compelling as to create probable cause to believe that specific criminal conduct has occurred, police must obtain a warrant to search a premises rather than attempt to gather evidence by way of an administrative inspection. *Bruce v. Beary*, 498 F.3d 1232, 1242 (11th Cir. 2007); *Club Retro, L.L.C.*, 568 F.3d at 195. Here, Plaintiffs do not dispute that, although the alleged underlying basis for the search related to "record-keeping" violations, a warrant was first obtained to conduct the search. Thus, the instant facts differ from those in *Bruce* and *Club Retro*, where the searches were warrantless.

Plaintiffs' pleadings and arguments generally attack the execution of the warrant that resulted in the confrontation between Smith and Decedent in the doorway with weapons. The undisputed facts show that Defendant Smith was investigating a theft and contacted Abilene Gold Exchange in furtherance of that investigation, at which point he, after speaking with Camp on the phone, became suspicious of illegal activity. The facts further show that a warrant was first obtained and the officers had knowledge that the owners and employees of Abilene Gold Exchange would likely be armed. (Pls.' Resp. Br. 7 ("Detective Cowan's comments [that Abilene Gold Exchange had guns in the store] caused Smith and his supervisors to conclude that

a heightened warrant service technique be employed.")).  Plaintiffs contend that in previous

dealings with the Abilene Gold Exchange, officers never had any problems with the owners

and/or employees.  The Court notes that in *Bruce*, as here, there was also evidence that prior

inspections had been conducted by "very polite gentlemen" who came into the office and merely

requested certain records and examined them with no incident.  *Bruce*, 498 F.3d at 1243.  Yet,

the Court finds it important to note that here a search warrant was first obtained approving the

search of Abilene Gold Exchange and seizure of certain records.  (Pls.' App. 374-392.).  Even

though Plaintiffs point out that no problems had occurred in previous interactions between

Abilene Gold Exchange and the police department, such does not automatically translate into a

reasonable assurance that there would be no issues this time.

    The parties each argue and direct the Court to evidence showing that the officer knew that

Abilene Gold Exchange personnel were generally armed.  The prior visits by officers to Abilene

Gold Exchange also confirmed this fact.  Further, the establishment was known to have several

firearms within easy reach of any employee at any time.  Plaintiffs allege the same in their

complaint and do not dispute these facts (although they argue that the officers aware of these

facts should have proceeded in a different manner).  Defendant Smith also believed after

speaking with the owner (Mr. Camp) on the phone prior to obtaining the warrant that Camp

maintained an "anti-police" attitude.[9]

    Here, although the Court cannot say that the style and manner of executing the search

warrant was the wisest plan, the individual Defendants' conduct is not to be considered with the

---

    [9]Camp was also known by the officers to have a prior felony conviction.  After the events
on December 13, 2011, Camp was prosecuted for being a felon in possession of a firearm.  This
Court has already accepted his plea and sentenced him for that crime.

benefit of 20/20 hindsight. *See Graham*, 490 U.S. at 396. That is exactly what the Plaintiffs are requesting the Court to do in their argument. Even though Plaintiffs may contend that Smith's manner of entering the premises in "raid style" and then walking past the open doorway was improper because the officers knew that the employees would likely be armed and would attempt to defend the establishment against any perceived robbery, it is at best negligent conduct and cannot form the basis for a constitutional violation.[10] Based upon the circumstances known to the officers at the time, their manner in entering the establishment with weapons drawn cannot be said to be unreasonable as a matter of law.

In arguing that Cass might have mistaken the officers' execution of the warrant as a robbery, Plaintiffs attempt to create a fact issue by arguing that the officers, and Defendant Smith in particular, did not announce that they were police when entering the premises. The video clearly shows that the first person through the door was a uniformed officer whose uniform is clearly visible. The third and fourth officers who came into the business were wearing vests containing the word "POLICE" in large white lettering against the black background of the vests.[11] Defendants argue, and the deposition evidence supports, that all the officers who executed the warrant state in their depositions that they announced "police" or "police search warrant" when they entered. Plaintiffs rely upon the Declaration of a Mr. Bill Adams, who was outside the premises approximately 25 feet away. Mr. Adams declares that after the officers

---

[10]The security-camera video clearly shows Smith carrying a clipboard and proceeding, presumably, toward Camp; only then does Smith perceive Cass to his left and somewhat behind him in the open doorway approaching the front of the establishment. At this point the split-second drawing of the gun by Cass can be seen to take place and Smith shoots twice.

[11]Officer Smith, who shot Decedent, was wearing an all-black vest without the large lettering identifying "police" and had his badge fastened to the front right side of his waist.

"quickly entered the store" he "did not hear them yell anything." (Pls.' App. 3.) Defendants argue that Plaintiffs are attempting to make an illogical jump from the declaration that Adams, outside and 20-25 feet away from the front door of the entrance into Abilene Gold Exchange, did not hear the officers "yell anything" to a material fact dispute that none of the officers announced they were police once inside the premises. The Court finds that to make such a leap may not be illogical, as argued by Defendants, but it is certainly speculation without any support in the record. An actual controversy of fact exists only where both parties have submitted evidence of contradictory facts and not mere guesses or speculation. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999). As further argued by Defendants, even Camp (who was present inside the premises when the officers entered) states that the officers came in giving commands and he does not recall specifically whether the officers yelled "police" or "search warrant." (Defs.' Supp. App. 94 (police video of Camp interview)). As contended by Defendants, Camp states in his interview that he could not say that the officers did not yell "police" or "search warrant" and further states "it is possible" that the police did say "police" or "search warrant."[12] (*Id.*) He simply could not recollect specifically. (*Id.*) Finally, Camp states during his interview that the police entered and were yelling, making "it difficult to discern the words they were yelling." (*Id.*) Thus, his statements do not directly contradict the officers' deposition testimony that they did announce "police" and/or "search warrant."

Plaintiffs argue that "[t]he only reason [the Abilene Police Department] changed its tactics when dealing with [Abilene Gold Exchange] was Cass and Camp's speaking out against

---

[12]Camp also states that the officers "may have" identified themselves or stated "warrant." (Defs.' Supp. App. 94 at 1:24:59.)

[the Abilene Police Department] and its proposed ordinance." (Pls.' Resp. Br. 27.) Yet, this argument goes to Plaintiffs' First Amendment retaliation claim and not to Plaintiffs' claims for improper execution of the warrant. Plaintiffs also argue in conclusory form that "Defendants had no real concern of the destruction of evidence so there was no need for an element of stealth or quickness." (*Id.*) However, conclusory arguments do not create a genuine issue of material fact. Based on the undisputed evidence, the Court finds that Plaintiffs have failed to allege a constitutional violation as to the manner in which the warrant was executed. Thus, the Court finds that no genuine issue of material fact exists so as to prohibit summary judgment in favor of both Defendants based on qualified immunity for any claims premised upon the manner in which the warrant was executed.[13]

### First Amendment Retaliation Claim

"The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002) (citing *Colson v. Grohman*, 174 F.3d 498, 508 (5th Cir. 1999)). To establish First Amendment retaliation, a plaintiff must show that (1) he engaged in a constitutionally protected activity, (2) the defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were

---

[13]Standridge states in his Affidavit that not only was he not present for the execution of the warrant, but he also did not participate in the preparation and request for the warrant. In fact, he further states in his Affidavit that he was not even aware of the warrant until he received a message that there had been an officer-involved shooting and that he was out of town in San Antonio when these events transpired. (Defs.' App. 4-6.) Plaintiffs have failed to rebut this evidence so as to create a genuine issue of material fact as to whether Standridge personally participated in any fashion in the execution of the warrant or any use of force.

substantially motivated against the plaintiff's exercise of constitutionally protected conduct. *Id.*

Here, Defendants concede in their Motion that Plaintiffs have met their burden on the first two

elements; however, Defendants argue that no genuine issue of material fact exists on the third

element and summary judgment should be granted in their favor.

In cases involving mixed motives for conducting police action—such as cases where

officers might have a motive to retaliate and also a ground to charge criminal conduct against a

citizen they dislike, the objectives of law enforcement take primacy over the citizen's right to

avoid retaliation. *Keenan*, at 261-62.

> The test [in such instances] for qualified immunity, therefore,
> involves, though it does not end with, the question of probable
> cause. If no reasonable police officer could have believed that
> probable cause existed for the law enforcement actions [by the
> officers] against the plaintiff[], then their retaliation violated
> clearly established law in this circuit. If probable cause existed,
> however, or if reasonable police officers could believe probable
> cause existed, they are exonerated.

*Keenan*, 290 F.3d at 262.

Here, Defendants argue that Abilene Gold Exchange's failure to report purchases of gold

and silver, in concert with Camp's previous felony conviction and his failure to cooperate during

an investigation into stolen property, raised a probable-cause belief that Camp and Cass were

violating the law by failing to properly report gold purchases. Defendants further contend that

Plaintiffs do not attempt to dispute the validity of probable cause or the validity of the warrant

itself. Thus, Defendants argue, probable cause existed for obtaining and executing the search and

seizure warrant and retaliation did not play a role. Defendants contend that summary judgment

on their qualified-immunity defense is proper on this basis alone as a matter of law. However,

Defendants also argue that summary judgment is proper because Plaintiffs fail to state a constitutional violation for retaliation, given that Plaintiffs have not created a genuine issue of material fact as to whether Smith knew Cass had spoken against the ordinance or that Standridge (though having knowledge of Cass's protected speech) played any role in obtaining the warrant or its execution.

Defendants argue that although Standridge was present at the prior city council meeting and heard Cass speak against the proposed ordinance, Standridge did not participate in obtaining the warrant, in executing the raid, or in the shooting of Cass. Defendants further contend that there is no evidence that Defendant Smith was even aware Cass had spoken out against the ordinance because Smith was not present at the city council meeting. They further argue that Plaintiffs have not directed the Court to any evidence that anyone informed Smith, prior to his obtaining the warrant and executing it, that Cass had ever spoken out against the ordinance. Plaintiffs attempt to create a fact issue on this point by arguing that Detective Cowan had worked to have the ordinance passed and he was present at both the city council meeting where Cass spoke against the ordinance and also at the planning of how the warrant would be executed. Plaintiffs contend that Cowan informed the other officers of the passage of the ordinance "and the jury can reasonably conclude that Cowan . . . told the other officers about Cass' comments at the recent council meeting . . . ." (Pls.' Resp. Br. 8.)

Defendants contend, however, that regardless of Plaintiffs' conclusory argument on this point, there is no evidence that the officers responsible for seeking and obtaining the warrant and executing it had any knowledge that Cass had spoken out against the ordinance. Defendants contend that Plaintiffs rely upon conclusory statements and speculation in arguing otherwise. As

such, Defendants argue, there can be no genuine issue of material fact as to motivation.  It is well settled that conclusory allegations, unsubstantiated assertions, and speculation are not substitutes for summary judgment evidence.  Speculation as to what Cowan may or may not have told the officers involved in entering Abilene Gold Exchange to execute the warrant will not suffice to create a genuine issue of material fact that Smith had any knowledge Cass had spoken out against the ordinance.  Without any knowledge of any alleged prior protected speech, there can be no retaliation by Smith.

Additionally, as already noted above, Defendant Standridge was not even aware a warrant had been obtained or executed until he received a message that an officer-involved shooting had occurred—all while Standridge was out of town in San Antonio.  Finally, Defendants argue that any alleged bias Officer Cowan may have had against Camp or Decedent cannot be imputed to Defendants Standridge or Smith.

Plaintiffs counter that the Court should find that genuine issues of material fact exist as to Officer Smith's motives in obtaining and executing the warrant, as well as his motives in shooting Decedent.  That is, Plaintiffs contend that genuine issues of fact exist because a jury could find, based upon the timing and manner of the raid, that retaliation for Decedent speaking out against the proposed ordinance at the city council meeting was the true motive for Smith to obtain and execute the warrant in the manner it was executed.  Yet, as already stated above, there is no evidence that Defendant Smith had any knowledge Cass had spoken out against the ordinance.  And, even though Defendant Standridge may have been present when Cass spoke against the ordinance at the council meeting, the unrebutted evidence shows that Standridge was out of town and unaware a warrant was obtained and executed.  Defendant Standridge also avers

in his affidavit that he did not direct or order any police department officer or employee to investigate Cass, Abilene Gold Exchange, or Camp.  Beyond making conclusory allegations, unsubstantiated assertions, and mere speculation, Plaintiffs have failed to create a genuine issue of material fact.

Thus, the Court finds that Plaintiffs have failed to create a genuine issue of material fact as to whether Defendants Smith or Standridge retaliated against Cass in obtaining and executing the warrant or in the shooting that ensued during the execution of the warrant.   Summary judgment is proper as to Plaintiffs' First Amendment retaliation claims against Defendants Smith and Standridge in their individual capacities because Plaintiffs have failed to call into question the Defendants' qualified-immunity defense.

## IV.
## CONCLUSION

For the above-stated reasons and those argued by Defendants, Defendants' Motion for Partial Summary Judgment on the Issue of Qualified Immunity is **GRANTED** and Plaintiffs' First and Fourth Amendment claims against Defendants Smith and Standridge in their individual capacities are **DISMISSED** with prejudice.

SO ORDERED.

Dated this ___3rd___ day of October, 2014.

SAM R. CUMMINGS
UNITED STATES DISTRICT JUDGE

26